AMERICAN STONE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10898.   Promulgated November 22, 1927.

*Robert P. Smith, Esq.,* for the petitioner.
*Maxwell E. McDowell, Esq.,* for the respondent.

244

OPINION.

GREEN: The petitioner alleges that the respondent erred, first, in fixing for invested capital purposes a value of $40,000 on a certain pulp stone quarry. The pertinent section of the Revenue Act of 1918 reads as follows:

SEC. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

*        *        *        *        *        *        *

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the

par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *

It appears that in June, 1915, C. E. Wemple, who for the prior 15 years had been associated with the Smallwood Stone Co. of Empire, Ohio, which at that time was one of the largest producers of pulp stone in the United States, withdrew from this company and purchased a quarry at Littleton, W. Va., for $17,300, with the intention of engaging in the building-stone business. Soon after coming into possession of this quarry, he was convinced that the content was suitable for the manufacture of pulp stones. Samples of the stone were sent to Greely & Co., importers and fabricators of pulp stone at Portland, Me. This concern was one of the largest importers of pulp stones from England and was conversant with the requirements of the trade. Greely & Co. had several of the pulp stones fabricated and placed in use in paper mills where a thorough test was made. These tests proved that the stones satisfied the requirements for pulp stone. Greely and his associate, Hall, visited the quarry at Littleton, W. Va., in August, 1915, and in conjunction with Wemple determined that the quarry contained sufficient stone, after allowing for waste in quarrying, to produce 17,000 units of 2½ tons each. It has been found as a fact that the life of the quarry was 20 years and that the net profit per unit was $50.

Two credible and thoroughly qualified witnesses testified unequivocally that the assets acquired by the petitioner in exchange for its stock were worth at least $250,000 on the date of their acquisition by the corporation. Their testimony as to value is entirely consistent with the remainder of the facts proven and we conclude, therefore, that inasmuch as the corporation issued in exchange for such assets, stock of the par value of $40,000, it is entitled to a paid-in surplus of $210,000.

The petitioner also alleged that the respondent erred in his computation of depletion for the year 1919. It has been stipulated that fifteen hundred and twenty 2½-ton units were produced during this year. Depletion should be computed by using the same cost as has been allowed for purposes of invested capital.

The petitioner further alleges that the respondent erred in refusing to allow as invested capital notes in the amount of $50,000 paid in for capital stock. The notes in question were given in good faith by solvent makers for capital stock which was actually issued. The makers were at all times solvent and able to pay on demand. The record shows that the notes were treated by the petitioner as

246

capital assets, and on two occasions were used by it as collateral for loans. The notes are properly includable in invested capital. See *Hewitt Rubber Co.*, 1 B. T. A. 424, and *American Steel Co.*, 1 B. T. A. 839.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.